U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 1 2 2012

CLERK, U.S. DISTRICT COURT
By_____
　　　　　　　　Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

WILLIAM CARL WOOLEY, §
§
Petitioner, §
§
v. § No. 4:11-CV-858-A
§ (Consolidated with
RICK THALER, Director, § Nos. 4:11-CV-897-A
Texas Department of Criminal § and 4:11-CV-898-A)
Justice, Correctional §
Institutions Division, §
§
Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 filed by petitioner, William Carl Wooley, a

state prisoner currently incarcerated in Huntsville, Texas,

against Rick Thaler, Director of the Texas Department of Criminal

Justice, Correctional Institutions Division, respondent. After

having considered the pleadings, state court records, and relief

sought by petitioner, the court has concluded that the petition

should be denied.

### I.  Factual and Procedural History

In February 2006 petitioner, who was 59 years old at the

time, was charged by separate indictment with prohibited sexual

conduct, sexual assault of a child younger than 17 years of age,

and aggravated sexual assault of a child younger than 14 years of age in the 297th District Court of Tarrant County, Texas. (02State Habeas R. at 149; 03State Habeas R. at 144; 04State Habeas R. at 149[1]; 02State Habeas RR at 6)   On December 13, 2006, petitioner entered open guilty pleas to a jury, and his trial on punishment commenced.   Initially, the following stipulation of evidence was entered into evidence and read to the jury:

> Pursuant to Texas Code of Criminal Procedure Article 1.15, the following constitutes stipulated evidence for this matter.   Presented in and to the said court, it is hereby stipulated between the State of Texas and WILLIAM CARL WOOLEY, both individually as well as through his attorney that the defendant in this case is the same WILLIAM CARL WOOLEY referred to in the following stipulation of evidence.   The Defendant, WILLIAM CARL WOOLEY, hereby stipulated that:

> WILLIAM CARL WOOLEY (hereafter called 'defendant'), was born on July 15, 1947 and has worked in the engineering field.   He was previously employed by Bell Helicopter and has never been convicted of a felony.   The defendant has a biological son, DAVID WOOLEY.   The defendant married [C.S.] in 1999.   [C.S.] is the mother of [R.W.] (a pseudonym). . . .   [C.S.] died from breast cancer in 2003, and the defendant adopted [R.W.]   This adoption was final on November 25, 2003.   After the death of [C.S.], DAVID moved out to go to college.   This left [R.W.] and the defendant living alone in their house in Grapevine, Tarrant County,

---

[1]"02State Habeas R." refers to the record in petitioner's state habeas application no. WR-70,773-02; "03State Habeas R." refers to the record in petitioner's state habeas application no. WR-70,773-03; "04State Habeas R." refers to the record in petitioner's state habeas application no. WR-70,773-04.

Texas.

On May 27th, 2005, DAVID WOOLEY brought two
computer disks to the Grapevine Police Department
containing video files of his father, the defendant,
having sexual intercourse with his step-sister, [R.W.].
[R.W.] was born on October 2, 1990 and was 14 years of
age at the time the police were notified.

DAVID WOOLEY gave a written statement about how
these disks were found.  He informed police that he had
gone to the defendant's home the day before, on May
26th, 2006.  DAVID entered the Grapevine house and
observed his father viewing a computer video of two
people having sex.  David further stated that he
believed the two individuals having sex in the video
were his father, the defendant, and his step-sister,
[R.W.].  DAVID pretended not to see anything and
completed the work on his father's computer.  However,
he returned to his father's residence the next day to
confirm his suspicions.  DAVID said he was able to
locate several video clips of his father having sexual
intercourse with his 14-year-old step-sister and copied
them to disks, which he brought to the Grapevine Police
Department.

After watching the video files, the police and
Child Protective Services arranged interviews with
[R.W.].  [R.W.] told the CPS workers that the defendant
had been having sexual intercourse with her since she
was 13 years old, after the death of her mother.  She
stated that on many occasions, she had performed oral
sex on her father.  In addition, her father had full
sex with her on numerous occasions.  [C.S.] married the
defendant in 1999 but moved into the defendant's house
in 1997 prior to their marriage.  They lived in
Grapevine, Tarrant County, Texas.

A few months after her mother died, [R.W.] said
that the defendant began grooming her with supposed
"accidental" touches of her breast and buttocks as well
as orchestrated naked encounters.  The defendant later
progressed to unveiled intentional touching of her

3

breast and buttocks as well as inserting his finger in her vagina. He began making her perform both oral and vaginal sex. [R.W.] said that the defendant never used a condom and had ejaculated inside her. She said that the defendant did not need to use a condom because he was "fixed."

The defendant would make her perform sex acts in order for her to get clothes or other items, spend the night with friends, or go places. [R.W.] remembered a specific time, when she was 13 years old, that the defendant bought her a new bed from Stacy's Furniture. The defendant made her have sexual intercourse with him on the new bed. Police obtained records from Stacy's Furniture showing that the new bed was delivered on July 6, 2004 when [R.W.] was still 13 years of age.

[R.W.] stated that when she wanted to go somewhere, the defendant would write the sex act required for her to get permission to go on a tally sheet. This tally sheet was kept posted on the refrigerator in the home they shared. For each time she was allowed to get things or see friends, she would have to perform the act when she returned. On several occasions, he required her to pose for erotic pictures and videos.

Finally, [R.W.] stated that while the sex acts occurred usually twice per week, the most recent was sexual intercourse with the defendant had occurred two days prior to the May 27, 2005 interview with CPS.

**The defendant further consents to the introduction of evidence by oral stipulation or by affidavit, written statements of witnesses, and other documentary evidence as agreed upon that may be introduced by the State that makes the basis of this stipulation, as follows:**

**STATE'S EXHIBIT #1: This Stipulation of Evidence**
**STATE'S EXHIBIT #2: CD Rom containing phone calls from Defendant**
**STATE'S EXHIBIT #3: Certified copy of the adoption decree**

4

**STATE'S EXHIBIT #4:** CD Rom containing video of dildo and sex
**STATE'S EXHIBIT #5:** CD Rom containing video of sex with
special Effects
**STATE'S EXHIBIT #6:** Picture of [R.W.] and her new bed

The state also called [R.W.] to testify and published the above-referenced exhibits to the jury. (RR, vol. 3, at 19-27, 29) The defense called Dr. Richard Schmitt, petitioner's psychologist, and Keith Atkins, a friend of petitioner's. (RR, vol. 3, at 61-122, 124-30) During Dr. Schmitt's testimony both mitigation and additional inculpatory evidence was elicited. At the conclusion of the trial, the jury assessed petitioner's punishment at the maximum sentence in each case-*i.e.,* ten years' imprisonment and a $10,000 fine on the prohibited sexual conduct charge, 20 years' imprisonment and a $10,000 fine on the sexual assault of a child younger than 17 charge, and life imprisonment on the aggravated sexual assault of a child younger than 14 charge. (RR, vol. 2, at 157; 02State Habeas R. at 150; 03State Habeas R. at 145; 04State Habeas R. at 150)

Petitioner appealed his sentences, but the Second District Court of Appeals of Texas affirmed the trial court's judgments. *Wooley v. State,* Nos. 2-06-442-CR, 2-06-443-CR, 2-06-444-CR, 2007 WL 3037932 (Tex. App.-Fort Worth Oct. 18, 2007) (not designated for publication). Petitioner filed three petitions for

discretionary review, one for each case, in the Texas Court of
Criminal Appeals, but they were untimely filed. *Wooley v. State*,
PDR Nos. 048-08, 049-08 & 050-08.   Thereafter, petitioner filed
three state habeas applications, one for each case, challenging
his convictions and sentences, which were denied by the Texas
Court of Criminal Appeals without written order on the findings
of the trial court.   (02State Habeas R. at cover; 03State Habeas
R. at cover; 04State Habeas R. at cover)   This federal habeas
petition followed.

## II. Issues

Petitioner raises thirteen claims in this petition.
Specifically, he claims—

"Claim (1).  Petitioner received deficient legal
representation during sentencing phase of his trial, in
violation of his Sixth Amendment right to effective
assistance of counsel.  Specifically, counsel
express[ed] his personal opinions before the jury,
which influenced the jury's verdict.

Claim (2) Petitioner received deficient legal
representation during his sentencing in violation of
his Sixth Amendment right to effective assistance of
counsel and in violation of his Fourteenth Amendment
right to due process of law.  Specifically, counsel
failed to preserve a complaint that the sentences were
disproportionate and cruel and unusual punishment, by
failing to make a timely request, objection or motion.
Petitioner was prejudiced thereby.

Claim (3).  Petitioner received deficient legal
representation on direct appeal in violation of the

6

Sixth Amendment rights to effective assistance of
counsel and in violation of his Fourteenth Amendment
rights.  That counsel filed a brief that he admitted
was not properly preserved for appeal.

Claim (4).  Petitioner received deficient legal
representation in that counsel failed to object and
file a motion to suppress evidence, in violation of his
Sixth and Fourteenth Amendment right to effective
assistance of counsel.  Counsel failure [sic] to
investigate the case, witness prejudiced the
petitioner.

Claim (5).  Petitioner received deficient legal
representation at the punishment stage, that counsel
made an unsound strategic decision to call his
psychologist to testify and to elicit and open the door
to prejudicial testimony.

Claim (6).  Petitioner was denied a full and fair
opportunity to litigate his exclusionary claims,
because he received deficient legal representation, in
violation of his rights under the Sixth and Fourteenth
Amendments to the United States Constitution and law,
but not limited to the above.  By his counsel[']s
allowing fruits of a criminal offense by another to be
used as evidence against him without objection.

Claim (7).  The state prosecutors violated
petitioner[']s right under the Equal Protection
components of the Fourteenth Amendment to the
Constitution of the United States, specifically engaged
in outrageous conduct, by knowingly allowing evidence
stolen from the petitioner's residence by a private
person to be used against him in violation of Article
38.23(a) of the Texas exclusionary rule.

Claim (8).  Petitioner received deficient legal
representation during the penalty phase of his trial,
in violation of the petitioner's Sixth Amendment right
to effective assistance of counsel, Eighth Amendment
rights to a reliable penalty hearing and to be free
from cruel and unusual punishment, and Fourteenth

7

Amendment right to due process of law.

Claim (9). The state of Texas violated Texas discovery rules and the fundamental requirements of *Brady vs Maryland* and *Napue vs Illinois* by failing to disclose mitigating and impeaching evidence regarding previous investigative reports from Child Protective Services and the Grapevine police pre-arrest/ indictment, which included the involvement of David Wooley (Smith), thereby violating petitioner's Sixth Amendment right to counsel, Eighth Amendment rights to reliable penalty hearing and to be free from cruel and unusual punishment, and Fourteenth Amendment right to due process of law.

Claim (10).[2] Petitioner claims that his guilty pleas w[ere] involuntary because counsel failed to advise him he could file a motion to suppress the video files that w[ere] stolen from his residence and gave [sic] to police. That had counsel advised the petitioner that he could challenge the evidence stolen from his residence, he would not have entered a guilty plea but would have insisted on going to trial. That had counsel done so the outcome of the proceedings would have been different.

Claim (10). Petitioner claims that he was misle[]d to his prejudice, insofar that counsel failed to inform him that the state would seek the maximum punishment for this offense, however in essence, as reflected by the record, counsel made an agreement that the petitioner would enter a[n] open guilty plea on three indictments and the state would dismiss the remaining five indictments once he plead[ed] guilty to the three indictments. Petitioner states that had he known this he would never had entered a[n] open guilty plea but wou[l]d have insisted on going to trial.

---

[2]Petitioner sets forth two claims designated as "Claim 10" and supplements "Claim 10" in his supplemental petition. (docket entry no. 24) The court sets forth the claims as designated.

8

That counsel misle[]d the petitioner into entering a[n] open guilty plea to three of the eight charges against him, but failed to advise and or inform the petitioner that the state would oppose probation and would seek the maximum punishment on the three charges. That had he known this he would have never entered a guilty plea, but would have insisted on proceeding to trial.  That counsel was ineffective by his failure to disclose the state[']s position to him before allowing him to enter open pleas of guilty.

Claim (11).  Petitioner's trial attorney w[as] burden[ed] with actual conflicts of interest where counsel represented to the jury that he also had a 14 year old child, this statement to the jury violated petitioner[']s Sixth Amendment right to effective assistance of counsel, Eighth Amendment rights to a reliable penalty hearing and to be free from cruel and unusual punishment, and Fourteenth Amendment right to due process of law.

Claim (12).  Petitioner received deficient legal representation at the pretrial stages of his case, that counsel failed to test the state[']s case against him and failed to inform the petitioner whether he had any merit and after diligently searching the record, he had concluded such motions would be without merit.

Claim (13).  Petitioner received deficient legal representation during the punishment phase of his trial, in violation of the petitioner's Sixth Amendment right to effective assistance of counsel and to be free from cruel and unusual punishment, and the Fourteenth Amendment right to due process of law.  That the expert testified for the petitioner that he could be treated for the illness.  Petitioner had no prior criminal history."

(Pet. at 4-9; Supp. Pet. at 1)

### III.  Rule 5 Statement

Respondent believes that one or more of petitioner's grounds

are unexhausted and procedurally defaulted but that the petition
is not barred by limitations or subject to the successive-
petition bar.  (Resp't Ans. at 5)

## IV.  Discussion

### *Legal Standard and for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf
of a person in custody pursuant to the judgment of a state court
shall not be granted with respect to any claim that was
adjudicated on the merits in state court proceedings unless he
shows that the prior adjudication:  (1) resulted in a decision
that was contrary to, or involved an unreasonable application of,
clearly established federal law, or (2) resulted in a decision
that was based on an unreasonable determination of the facts in
light of the evidence presented in the state court.  28 U.S.C. §
2254(d).  A decision is contrary to clearly established federal
law if the state court arrives at a conclusion opposite to that
reached by the Supreme Court of the United States on a question
of law or if the state court decides a case differently than the
Supreme Court has on a set of materially indistinguishable facts.
*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v.
Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court
decision will be an unreasonable application of clearly

10

established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### Exhaustion of State Court Remedies

As a preliminary matter, respondent asserts petitioner's claims (1), (3), (7) and (9), enumerated above, are unexhausted and procedurally barred from federal habeas review. (Resp't Ans. at 9-12)

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting

federal collateral relief.   28 U.S.C. § 2254(b)(1); *Fisher v.*
*Texas*, 169 F.3d 295, 302 (5th Cir. 1999).   The exhaustion
requirement is satisfied when the substance of the federal habeas
claim has been fairly presented to the highest court of the
state.   *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999);
*Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th
Cir. 1982).   In Texas, the highest state court for criminal
matters is the Texas Court of Criminal Appeals.   *Richardson v.*
*Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).   Thus, a Texas
prisoner may satisfy the exhaustion requirement by presenting
both the factual and legal substance of a claim to the Texas
Court of Criminal Appeals in either a petition for discretionary
review or a state habeas corpus proceeding pursuant to article
11.07 of the Texas Code of Criminal Procedure.   *See* TEX. CODE
CRIM. PROC. ANN. art. 11.07 (Vernon Supp. 2010); *Depuy v. Butler*,
837 F.2d 699, 702 (5th Cir. 1988).

Petitioner did not file a memorandum in support of his
federal petition, and a review of petitioner's state habeas
applications and supporting memoranda reveals that petitioner's
ineffective assistance claims raised in the state habeas
proceedings were multifarious.   Having reviewed those claims, it
appears claims (1) and (9) were raised, at least tangentially, in

the state courts.   (02State Habeas R. at 23, 25)   However, it
does not appear that claims (3) and (7) were raised, or, if so,
that the claims exceed the scope of the claims presented in state
court.   Thus, claims (3) and (7) are unexhausted.   Under the
Texas abuse-of-the-writ doctrine, however, petitioner cannot now
return to state court for purposes of exhausting the claims.
TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4.   The abuse-of-the-writ
doctrine represents an adequate state procedural bar to federal
habeas review.   *See Nobles v. Johnson,* 127 F.3d 409, 423 (5th
Cir. 1997).   Therefore, absent a showing of cause and prejudice
or a miscarriage of justice, such showing not having been
demonstrated, petitioner's ineffective-assistance claims (3) and
(7), raised for the first time in this federal petition, are
procedurally barred from this court's review.   *See Smith v.
Johnson,* 216 F.3d 521, 523-24 (5th Cir. 2000)

### Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the
effective assistance of counsel at trial.   U.S. CONST. amend. VI,
XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984).   To
prevail on an ineffective assistance claim in the context of a
guilty plea, a defendant must demonstrate that his plea was
rendered unknowing or involuntary by showing that (1) counsel's

representation fell below an objective standard of
reasonableness, and (2) there is a reasonable probability that,
but for counsel's deficient performance, he would not have
pleaded guilty and would have insisted on going to trial. *Hill
v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Smith v. Estelle*, 711
F.2d 677, 682 (5th Cir. 1983); *see also Strickland v. Washington*,
466 U.S. 668, 687 (1984).

In evaluating an ineffective assistance claim, a court must
indulge a strong presumption that counsel's conduct fell within
the wide range of reasonable professional assistance or sound
trial strategy. *Strickland*, 466 U.S. at 668, 688-89. Judicial
scrutiny of counsel's performance must be highly deferential and
every effort must be made to eliminate the distorting effects of
hindsight. *Id.* at 689. Furthermore, federal habeas courts are
not to lightly second-guess counsel's decisions on matters of
tactics and generally entrust such matters to the professional
discretion of counsel. *Id.* at 690. Where a petitioner's
ineffective assistance claims have been reviewed on their merits
and denied by the state courts, federal habeas relief will be
granted only if the state courts' decision was contrary to or
involved an unreasonable application of the *Strickland* standard.
*See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v.*

*Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

In the state habeas proceedings, the habeas judge, who also presided over the trial, appointed a "writ master" to consider petitioner's applications, wherein he raised two grounds. (02State Habeas R. at 7-8)  Under the first ground, petitioner provided a laundry list of acts and omissions by trial counsel he claimed represented deficient performance, which were construed by the master to include:  (1) counsel failed to give accurate advice regarding probation eligibility; (2) counsel promised that he would receive probation; (3) counsel failed to file any pre-trial motion[s] or a motion for new trial; (4) counsel failed to conduct an independent investigation by obtaining medical and CPS reports; (5) counsel failed to file a motion to suppress the State's evidence; (6) counsel did not challenge the proportionality of his sentence or make any objection to his sentence; and (7) counsel failed to present adequate punishment evidence.  Under the second ground, petitioner claimed his sentences were disproportional and cruel and unusual.  (02State Habeas R. at 7-8)  Additionally, petitioner's state habeas counsel, Randy Schaffer, filed a "supplement" to petitioner's original applications raising the ineffective assistance claim that trial counsel "made an unsound strategic decision to call"

15

petitioner's psychologist "to testify and to elicit and open the door to prejudicial testimony."   (02State Habeas R. at 51-58; 03State Habeas R. at 52-59; 04State Habeas R. at 54-61)

Trial counsel, Robert Ford, responded to petitioner's original applications by affidavit as follows:

> This affidavit is filed in response to the writ of habeas corpus filed by William Wooley. . . .
>
> To set the stage before answering Wooley's allegations, the reader needs to keep in mind that the jury saw Wooley and his stepdaughter in a high resolution DVD recorded by Wooley.  The DVD showed [R.W.] masturbating with directions from Wooley and eventually [R.W.] asking Wooley to: "Fuck me harder, Daddy".  The jury was stunned and I mean stunned beyond belief that William Wooley had directed [R.W.] in masturbation techniques and then filmed the sex act between the two.
>
>     . . .
>
> 1.  I never promised Mr. Wooley that he would receive probation in his case.  In fact, I told William Wooley on numerous occasions in meetings that the possibility of probation was remote if not impossible.  I met with Mr. Wooley at least five times and discussed his case at length.  Why did I tell Mr. Wooley he was going to prison.  A sampling of his thoughts on [R.W.] follow[s]:
>
> > [R.W.] liked to take pictures of herself with her mother's dildo.
> >
> > I had to teach [R.W.] about sex because that is what her mother asked me to do before she died.
> >
> > [R.W.] liked full blown sex once a month.

[R.W.] once masturbated twenty times and
really got sore.

All kids are not the same.   [R.W.] said fuck
me hard, bite my boob, and get behind me.

If [R.W.] wanted to fuck – it was o.k. and
not against the law.

What I did with [R.W.] was educational.

[R.W.] was the best piece of pussy I ever
had.

<u>[R.W.]'s ability to climax would be very good
for the jury to hear because that
demonstrates her liking sex.</u>

The jury was charged on probation.   I did tell the
jury that it would take a supreme act to give probation
and then moved on to talk about penitentiary time
because of the William Wooley video that they had
viewed.   It is my opinion that the jury was so angry at
that point that probation was not a consideration.   I
was trying to minimize Wooley's penitentiary sentence.
Mr. Wooley is lucky that a juror or jurors did not jump
over the railing and assault him.   The jury was so
angry that they were literally exuding hatred for my
client.

Let me also add that William Wooley asked me on
numerous occasions for a copy of the sex video because
he said he was entitled to look at it when he wanted.

2.   I did not file pretrial motions because this was an
open plea and we did not have any issues to litigate.
The State gave me every video, statement, still photo
they had.   I should also point out that the jury did
not view the 10 hours of hidden camera video William
Wooley made of [R.W.] while she was in the bathroom.

3.   There was no independent investigation to perform.
William Wooley[] read every report filed in this case.

We looked at photos he had taken.  We did not view his [R.W.] video together; however, I viewed the video in Mitch Poe's office on two occasions.  Mr. Wooley and I met in my office and at his residence to review files.

4.  There is no proportionality of sentence argument to make in this case.

5.  Dr. Richard Schmidt presented compelling evidence at trial.  He had treated William Wooley as a sex offender and gave a sympathetic description of what he thought Mr. Wooley's problems were and how they should be addressed.  I met at length with Dr. Schmidt before the hearing in order to get him ready for testimony.

6.  I repeatedly asked the prosecutor in this case for an offer and I was turned down on each and every occasion.  Mr. Poe told me that the family was not interested in a plea bargain.

7.  Mr. Wooley alleges that I failed to cross-examine his stepdaughter.  Let me be very specific at this point.  Wooley, repeatedly told me before and during trial he did not want [R.W.] cross-examined – period.  Why?  Because during her testimony Wooley leaned over to me and stated that they (referring to the State) have brainwashed her, she still loves me.

I rendered effective assistance of counsel in this case.  Mr. Wooley's writ is totally without merit.

(02State Habeas R. at 48-50)

In a separate affidavit, counsel responded to petitioner's

supplemental claim as follows:

This affidavit is filed in response to the writ of habeas corpus filed by Randy Schaffer on behalf of William Wooley. . . .

Mr. Wooley has obviously given Mr. Schaffer false information about the decision to use Dr. Schmidt at

trial.  Mr. Wooley and I discussed the problems and
advantages of having Dr. Schmidt testify.  One of the
key reasons Dr. Schmidt testified was based on the fact
that Mr. Wooley could not provide a list of witnesses
who would appear on his behalf.

I want to be excruciatingly clear about this
situation.  No one wanted to be involved in this case
on behalf of Bill Wooley.  I mean no one.  Finally, one
friend agreed to testify and he appeared but was of
limited help.  In other words, significant family
members would not speak up for Bill Wooley.  Mr. Wooley
has failed to inform Mr. Schaffer of that situation.

Mr. Wooley and I discussed Dr. Schmidt's
testimony.  Bill Wooley knew beforehand that negative
material was going to be brought out; however, in the
context of the offense the material had minimal impact.
The reader should also understand that Bill Wooley
understood that Dr. Schmidt's testimony would clarify
for the jury how the relationship with R.W. came about
and why it happened.  Dr. Schmidt also told the jury
that Bill Wooley was amenable to treatment.

### Mr. Schaffer is Wrong

The following quote appeared in the applicant's
brief:

Had the jury not heard this damaging testimony, there
is a reasonable probability that the punishment would
have been different.

Let me repeat that the jury in this case saw the
video that Bill Wooley produced.  A high quality
production showing R.W. masturbating with a dildo under
the direction of Bill Wooley.  And the video closed
with R.W. telling Bill Wooley to "fuck me harder
daddy."

That video said and showed Bill Wooley to the
jury.  Quite frankly, Jesus Christ – in person – could
not have saved Bill Wooley from a life sentence.  And,

Dr. Schmidt certainly did not contribute to any
increase in Bill Wooley's punishment.

Again, I rendered effective assistance of counsel
in this case. Mr. Wooley's writ is totally without
merit.

(02State Habeas R. at 107-08)

Consistent with counsel's affidavits, the master submitted

the following findings of fact[3]:

.   .   .

2.   Mr. Ford has been licensed as an attorney in the
     State of Texas since June 1989.

3.   Mr. Ford is known by this Court to have practiced
     criminal law in Tarrant County for many years and
     that he has served as trial counsel in a number of
     major felony cases, including capital murders.
     Mr. Ford was qualified to represent the applicant
     in this case.

4.   Mr. Ford did not promise the applicant that he
     would receive probation.

5.   Mr. Ford told the applicant on numerous occasions
     that the possibility of probation was remote if
     not impossible, and that he would likely be going
     to prison.

6.   Mr. Ford reached this assessment based on the
     applicant's unwillingness to show remorse or take
     responsibility for his sexual conduct with R.W.

--------

[3]The state court's findings of fact and conclusions of law
are essentially identical in all three state habeas proceedings,
thus the court sets forth only those findings of fact and
conclusions of law in 02State Habeas R.

7.    Mr. Ford filed a request for probation on the applicant's behalf.

8.    Mr. Ford recognized that the jury was unlikely to assess probation after they were shown a video recorded by the applicant of his 13 year old daughter, R.W., masturbating with a dildo and making sexually explicit comments and requests to him.

9.    Mr. Ford hoped that [the] jury's consideration of probation would be an avenue to minimize the applicant's potential penitentiary sentence.

10.   Mr. Ford provided the applicant with accurate information on probation and an accurate assessment of the likelihood that it would not be awarded.

11.   Mr. Ford provided the applicant with adequate representation regarding probation and probation eligibility.

12.   Mr. Ford did not perform an independent investigation of the applicant's case because he concluded that it was unnecessary.

13.   Mr. Ford received from the State every videotape, still photograph and statement in their possession.

14.   The applicant has not identified any evidence other than that made known to Mr. Ford by the State.

15.   Mr. Ford reviewed with the applicant every report and photograph that he received.

16.   Mr. Ford reviewed the evidence with the applicant at both Mr. Ford's office and at the applicant's house.

17.   Mr. Ford reviewed the videotape of R.W. on two

occasions at the prosecutor's office.

18. Mr. Ford did not review the videotape with the
    applicant despite the applicant's repeated desire
    to possess a copy of the videotape.

19. Mr. Ford did not file any pre-trial motions because the
    applicant entered into . . . open guilty plea[s] and no
    such motions were needed or appropriate.

20. Mr. Ford sought a plea agreement from the State,
    but the State chose not to make a plea offer.

21. The jury was not shown ten hours of hidden-camera
    video which the applicant taped while R.W. was
    using the bathroom.

22. Mr. Ford made reasonable preparations for the
    defense of the case.

23. Given the applicant's persistent and long-term
    sexual misconduct with R.W., his maximum sentence
    is not grossly disproportionate and does not
    provide grounds for a proportionality argument.

24. Mr. Ford did not provide the applicant inadequate
    representation by his decision not to challenge
    the proportionality of his sentence.

25. Dr. Richard Schmitt, a clinical psychologist,
    testified on the applicant's behalf.

26. Prior to making the decision to call Dr. Schmitt
    as a witness, Mr. Ford discussed with the
    applicant the advantages and disadvantages of his
    testimony.

27. Dr. Schmidt had had 44 counseling sessions with
    the applicant during the time between June 2005
    and December 2006.

28. Dr. Schmidt testified that he had made a plan to
    address the applicant's needs and that he believed

the applicant would respond to counseling.

29. Dr. Schmitt informed the jury that the applicant was amenable to treatment.

30. The applicant knew that negative material would also be brought out through Dr. Schmitt's testimony.

31. The applicant understood that Dr. Schmitt's testimony would clarify for the jury how the applicant's relationship with R.W. came about and why it happened.

32. Mr. Ford called Dr. Schmitt to testify partially because the applicant could not provide a list of witnesses who would appear on his behalf.

33. Mr. Ford was unable to find other witnesses, including significant family members, to testify on the applicant's behalf.

34. Keith Atkins, the only friend who did testify on the applicant's behalf, provided limited help.

35. The applicant does not identify any other witnesses or evidence that could have been introduced in his behalf.

36. Mr. Ford provided the applicant with adequate representation regarding the calling of witnesses, including Dr. Schmitt.

37. In his final argument to the jury Mr. Ford tried to reinforce the jurors' confidence in him and his argument by admitting that some of the evidence that he, himself, had brought before them was harmful to the applicant.

38. Mr. Ford provided the applicant with adequate representation as guaranteed by the Sixth Amendment.

39.  The following evidence undercuts any likelihood
     that the outcome of this case would have been
     different with another counsel or if Mr. Ford had
     represented the applicant in another manner:

   a.  The applicant started a relationship
       with [C.S.] (R.W.'s mother) when R.W.
       was approximately five years old.

   b.  The applicant and [C.S.] were eventually
       married.

   c.  After she married the applicant, [C.S.]
       found out that she had breast cancer.

   d.  [C.S.] died in 2003, when R.W. was
       twelve years old.

   e.  Later that year, the applicant adopted
       R.W.

   f.  In 2005, when R.W. was fourteen, David
       Wooley, the applicant's adult son from a
       prior relationship, found video files on
       his father's computer showing him having
       sexual intercourse with R.W.

   g.  David turned copies of the videos over
       to police.

   h.  Other videos were later discovered that
       showed that applicant had been secretly
       recording R.W. when she was in the
       bathroom since she was ten years old.

   I.  Compact discs containing these videos
       were admitted and published to the jury.

   j.  R.W. admitted to child protective
       services caseworkers that the applicant
       had been engaging her in a variety of
       sexual activity since her mother's
       death.

24

k.   R.W. estimated that she had sexual
     intercourse with the applicant
     approximately every other day for a year
     and a half.

l.   R.W. explained that applicant played
     upon her fears by threatening she would
     wind up in foster care if she told of
     their relationship since her mother and
     biological father were both dead and she
     had no relationship with other
     relatives.

m.   The applicant told R.W. that her mother
     had wanted him "to show [her] what it's
     like to be in a sexual relationship."

n.   The applicant posted a "tally sheet" in
     their home listing the sex acts required
     to see friends, go places, or buy
     clothes.

40.   Given the horrific circumstances of the
      applicant's persistent and on-going sexual assault
      of his stepdaughter R.W., including the
      videotapes, it is not reasonable to believe that
      the jury would have reached a different result had
      Mr. Ford done more investigation, more
      communication, or more preparation in this case,
      or if Mr. Ford had employed different strategies.

41.   The applicant was not denied effective assistance
      by Mr. Ford's representation.

(02State Habeas R. at 134-38) (citations to the record omitted)

Based on his findings and the state court records, the

master, applying the *Strickland* standard, entered the following

conclusions of law—

. . .

10. Under *Strickland,* counsels have a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

11. Counsels are not required to investigate every conceivable line of evidence no matter how unlikely the effort would be to assist the defendant.

12. The decision whether to call a witness is trial strategy and a prerogative of trial counsel.

13. Mr. Ford, a well-qualified and experienced attorney, made all appropriate preparations for the defense of the State's case against the applicant.

14. Mr. Ford conducted a reasonable investigation to prepare for the defense of the State's case against the applicant.

15. Mr. Ford provided the applicant with adequate information and representation regarding probation and probation eligibility.

16. The applicant's sentence[s] [and] fine[s] [are within the range of punishment for the . . . offense[s] . . . .

17. It is a well-settled Texas law that, as long as a sentence is within the proper statutory range of punishment, it will not be disturbed as an abuse of discretion.

18. Given the applicant's persistent and long-term sexual misconduct with R.W., his maximum sentence[s] [are] not grossly disproportionate.

19. Mr. Ford did not provide inadequate representation by his decision not to challenge the proportionality of the applicant's sentence[s].

20.   Mr. Ford provided the applicant adequate
      representation regarding the calling of witnesses,
      including Dr. Schmitt.

21.   Mr. Ford provided the applicant adequate
      representation as guaranteed by the Sixth
      Amendment.

22.   A party seeking to prove ineffective assistance of
      counsel, fails to carry his burden where he is
      unable to establish that, but for the alleged
      deficient conduct of counsel, the probability of a
      different result is such as to undermine one's
      confidence in the outcome.

23.   Given the horrific circumstances of the
      applicant's persistent and on-going, long term
      sexual assault of his stepdaugher R.W., including
      the videotapes, there is no reasonable probability
      sufficient to undermine confidence in the
      applicant's conviction[s] and sentence[s] that,
      but for his counsels' performance, the result of
      his trial would have been different.

24.   The applicant received effective assistance of
      counsel.

(*Id.* at 138-41) (citations omitted)

The state habeas judge adopted the master's findings and

legal conclusions, and, in turn, the Texas Court of Criminal

Appeals denied petitioner's habeas applications without written

order on those findings, which represents an adjudication of the

claims on the merits.   (02State Habeas R. at cover, 148; 03State

Habeas R. at cover, 143; 04State Habeas R. at cover, 148)

In this federal petition, petitioner makes no specific

27

reference to the state court findings and makes no effort to rebut the presumptive correctness of the findings nor has he presented argument or evidence that could lead the court to conclude that the state courts unreasonably applied *Strickland* based on the evidence presented in state court.   28 U.S.C. § 2254(d).

Petitioner's eighth and ninth claims are vague and ambiguous, and his eleventh claim is refuted by the record.[4]   The remainder of petitioner's claims are multifarious, and not properly before the court, conclusory, and/or involve counsel's trial strategy or matters of state evidentiary law.

Conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to meet *Strickland* standards.   *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998).   Furthermore, federal habeas courts are not to lightly second-guess counsel's decisions on matters of tactics and generally entrust such matters to the professional discretion of counsel.   Indeed, as noted in the state court's legal conclusions, "[s]trategic choices made after thorough

---

[4]Petitioner does not cite to the record where trial counsel allegedly "represented to the jury that he also had a 14 year old child," and the court was unable to locate any such statement by counsel.

investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Finally, petitioner has not demonstrated that the video files were illegally obtained by his son or that they were inadmissible. Under the Texas "exclusionary rule," "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005).[5] The Texas Court of Criminal Appeals has held that when a non-governmental actor takes property that is evidence of a crime without the consent of the owner and with intent to turn the evidence over to the police, the conduct may be non-criminal even though the person has the intent to deprive the owner of that property. *Jenschke v. State*, 147 S.W.3d 398, 402 (Tex. Crim. App. 2004). Therefore, Article 38.23 would not require exclusion of the video files. Furthermore, under state law, the entry of a guilty plea before a jury admits the existence of all facts necessary to establish guilt, however it

---

[5]Petitioner does not raise a Fourth Amendment claim in his federal petition.

does not restrict the state's right to present evidence. *York v. State*, 566 S.W.2d 936, 938 (Tex. Crim. App. 1978). Any evidence that would be admissible under a plea of not guilty is also admissible under a plea of guilty. *Id*. The purpose of offering evidence in such a case is to enable the jury to intelligently exercise its discretion in assessing punishment. *Id*. Thus, as a matter of state law, the video files showing petitioner engaging in the acts alleged in the indictment were admissible as well as evidence of other acts committed by petitioner against R.W. "for its bearing on relevant matters," including the petitioner's state of mind and the relationship between him and R.W. TEX. CODE OF CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp. 2010). *See also* TEX. CODE CRIM. PROC. ANN. art. § 37.07, § 3(a). Counsel may not be deemed ineffective for failing to file frivolous motions. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

Having reviewed the entirety of the record, counsel's performance was not outside the wide range of professionally competent assistance, and petitioner has failed to show that but for counsel's strategic decisions and other alleged acts or omissions, his sentences would have been significantly less harsh. *Dale v. Quarterman,* 553 F.3d 876, 880 (5th Cir. 1993).

Overall, trial counsel engaged in pretrial investigation through
the state's open file policy, filed pretrial motions, conducted
voir dire, gave opening and closing argument, made meritorious
objections and motions during trial, cross-examined state
witnesses, called two defense witnesses, devised a trial
strategy, and presented mitigating evidence through Dr. Schmitt
that petitioner had sought sex offender treatment, was amenable
to treatment, was the type of person that would respond to
treatment, and could function in a probation setting in the hope
of leniency from the jury.   (RR, vol. 2, at 93-146; RR, vol. 3,
at 11, 16-18, 57, 61, 94, 101, 110-12, 115, 119-21, 124, 138-41)
Counsel's performance and strategic choices, given petitioner's
admission of guilt to the offenses and the other overwhelming
evidence bearing on his guilt, satisfy the *Strickland* standard.

Even if petitioner could demonstrate deficient performance,
which he has not, he most certainly has not demonstrated a
reasonable likelihood that the result of his trial would have
been different and he would have received lighter sentences or
probation but for counsel's performance.   *Strickland* demands that
likelihood of a different result "must be substantial, not just
conceivable."   *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770,
792 (2011) (citation omitted).   Under the facts of this case, the

likelihood of a different is neither substantial nor conceivable.

### *Voluntariness of Petitioner's Guilty Pleas*

Petitioner claims his guilty pleas were involuntary because counsel failed to advise him that he could file a motion to suppress the stolen video files and that such a motion would be meritorious and inform him that the state would oppose probation and seek the maximum punishment in his cases.   (Pet. at 7-8)

A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary, and intelligent.  *James v. Cain,* 56 F.3d 662, 666 (5th Cir. 1995). The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford,* 400 U.S. 25, 31 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242 (1969).  If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980).  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings."  *Blackledge v. Allison,* 431

32

U.S. 63, 73-74 (1977).

The record reflects that, in open court, petitioner agreed to enter open pleas of guilty to the three indictments, that the state agreed to move for dismissal of five other indictments against petitioner, that petitioner was advised of the charges against him and the range of punishment for each offense, that petitioner understood the charges and the ranges of punishment, that petitioner discussed his pleas and other options with trial counsel, that petitioner understood he would be required to register as a sex offender for life if he pleaded guilty, that petitioner was pleading guilty because he was guilty and for no other reason, that petitioner had not been threatened by anyone, that no one had held out any hope of pardon or promises of reward in exchange for his guilty pleas, that counsel had not promised petitioner anything, that petitioner had decided to plead guilty given his options, the state's case, and to avoid putting R.W. through a "full-blown trial," that counsel had "always steadfastly maintained that if [petitioner] wanted a trial," counsel would try the cases, that although counsel and petitioner had had disagreements about particular things, it was petitioner's decision to plead guilty, and that petitioner's pleas were freely and voluntarily made.   (RR, vol. 2, 4-14)

Counsel warned petitioner that probation was unlikely, if not impossible, and ,for the reasons stated *supra*, petitioner cannot demonstrate that counsel performed deficiently in not pursuing a motion to suppress the video files or that such a motion would have been successful. Thus, it cannot be said that petitioner's otherwise knowing and voluntary pleas were rendered involuntary as a result of counsel's performance. Petitioner's subjective hope for lighter sentences or probation is not sufficient to render his guilty pleas involuntary. *McNeil v. Blackburn*, 802 F.2d 830, 832 (5th Cir. 1986).

For the reasons discussed herein,

The court ORDERS petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a

constitutional right.

SIGNED July ___12___, 2012.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE